# United States Court of Appeals
## For the First Circuit

No. 07-1790

UNITED STATES,

Appellee,

v.

ANTRON RUSSELL,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Lipez and Howard, Circuit Judges,
and Besosa,* District Judge.

Donald C. Lockhart, Assistant United States Attorney, with
whom Robert Clark Corrente, United States Attorney, and Kenneth P.
Madden, Assistant United States Attorney, were on brief, for
appellee.
James M. Fox for appellant.

August 6, 2008

*Of the District of Puerto Rico, sitting by designation.

**LIPEZ**, **Circuit Judge**.   This case crystalizes the difficulties confronted by defendants - and district court judges - as they navigate the turbulent waters of Booker and its aftermath. See United States v. Booker, 543 U.S. 220, 245 (2005).   The defendant, Antron Russell, has already been sentenced three times following his guilty plea on a charge of distributing crack cocaine.   Prior to the Supreme Court's decision in Booker, Russell was sentenced to 235 months of imprisonment, the bottom of the applicable guideline range.   After we remanded for resentencing in light of Booker, he was sentenced to 151 months, a downward variance based upon a 20:1 ratio that the district court substituted for the 100:1 ratio under the then-applicable guideline regime for offenses involving crack as opposed to powder cocaine.   We subsequently rejected the calculation of variances based upon "the categorical substitution of a 20:1 crack-to-powder ratio for the 100:1 ratio embedded in the sentencing guidelines" in United States v. Pho, 433 F.3d 53, 64 (1st Cir. 2006).   Accordingly, Russell's sentence was vacated.   Upon remand, he was sentenced to 180 months.

Russell now appeals that sentence, contending that it is not reasonable.   While his appeal was pending before us, the Supreme Court decided Kimbrough v. United States, 128 S. Ct. 558 (2007), holding that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant

-2-

that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Id. at 575. Russell seeks to parlay Kimbrough into a fourth sentencing. Because we conclude that the district court anticipated the holding in Kimbrough, considered the crack/powder disparity as part of its individualized § 3553(a) analysis at the most recent sentencing, and imposed a reasonable sentence, we affirm.

## I.

Russell was charged with possession with intent to distribute cocaine base in excess of fifty grams, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).[1] He entered a guilty plea pursuant to a plea agreement, stipulating that the quantity of cocaine base involved in the offense and related conduct totaled 233.74 grams. In exchange, the government agreed to recommend the lowest prison term within the applicable guideline range, advocate for either a two- or three-level decrease for acceptance of responsibility, and refrain from filing for a sentence enhancement under 21 U.S.C. § 851 and seeking an official victim enhancement under § 3A1.2 of the sentencing guidelines.

At the plea colloquy, the government reviewed the factual basis for the plea. On March 8, 2003, local police learned that a

---

[1]At the plea colloquy, the government characterized the drugs as "cocaine base or crack cocaine" and used these two terms interchangeably.

man fitting Russell's description was planning to sell crack at a McDonald's restaurant in Cranston, Rhode Island. At the scheduled time, Russell arrived at the McDonald's parking lot in a car driven by a woman. Police officers approached both sides of the car and removed the driver. As this was happening, Russell reached over from the passenger seat and drove the car forward and backward in an attempt to escape. Three officers were struck by the car, and the police ultimately opened fire on the car to stop it. Russell was carrying 141.24 grams of crack cocaine in his pocket. At the colloquy, Russell also admitted to selling additional quantities of crack cocaine, totaling 92.5 grams, to undercover officers on three prior occasions in late 2002 and early 2003.

At the first sentencing hearing, held on August 27, 2004, the district court calculated Russell's applicable guideline sentencing range.[2] Based on the stipulated drug quantities, Russell's base offense level was set at 34. The court found that a three-level reduction for timely acceptance of responsibility and a two-level victim-related enhancement for reckless endangerment, pursuant to § 3C1.2, were appropriate, yielding a total offense level of 33. Russell's 13 criminal history points placed him in Criminal History Category ("CHC") VI, producing a guideline sentencing range of 235 to 293 months.

---

[2]These guideline calculations have remained consistent throughout the three sentencing hearings in this case.

Russell objected to the two-level enhancement for reckless endangerment on the ground that, in light of Blakely v. Washington, 542 U.S. 296 (2004), the government had not met its burden of proving the facts predicate to the two-level enhancement beyond a reasonable doubt. Id. at 303. The court rejected this view, stating that there was no Blakely issue because "in the plea colloquy the Government outlined all of the facts that are alleged to support this enhancement" and Russell had agreed to that outline. The court imposed a 235-month sentence, the lowest sentence available within the guideline range.[3]

Russell appealed his first sentence based on the Blakely issue. However, while the appeal was pending, the Supreme Court decided Booker and the government conceded that a remand was required for resentencing under an advisory guideline regime. We accepted that concession and remanded.

In his written submissions and at the second sentencing hearing, held on October 28, 2005, Russell asked the court to impose a 120-month sentence – the applicable mandatory minimum. Russell asserted that a 120-month sentence would better serve the interest of rehabilitation than the much longer guideline sentence. He also claimed that his criminal history score was overstated and

---

[3]The court also sentenced Russell to five years of supervised release, with special conditions requiring that he seek full-time employment and participate in a substance abuse program. These conditions remained consistent through each of the three sentencings and Russell has not challenged them here.

argued that the 100:1 ratio for crack versus powder cocaine embedded within the sentencing guidelines was unjust. The government countered by highlighting Russell's long list of adult arrests and convictions and noting that the three short prison sentences he had served previously had not deterred his criminal conduct. The government also contended that "it should be left to Congress, not the Courts, to modify or even abrogate in its entirety the sentencing distinctions between crack cocaine and powder cocaine," and noted that if different district courts used different ratios to calculate post-Booker sentences for crack cocaine, substantial sentencing disparities would arise. The government advocated for the reimposition of a 235-month sentence.

The district court stated its categorical disagreement with the 100:1 ratio in the sentencing guidelines. The court stated that a 20:1 ratio, which would have produced a 151- to 188-month guideline range in Russell's case, should be used to guide the application of the advisory guidelines. The court then considered the § 3553 factors and imposed a sentence of 151 months.

Russell appealed this sentence, arguing that it was unreasonable even though it was substantially below the applicable guideline sentencing range. The government cross-appealed, arguing that the district court's categorical rejection of the 100:1 ratio violated our holding in United States v. Pho, 433 F.3d 53 (1st Cir. 2006) – a case decided about two months after Russell's second

sentence was imposed.  We remanded for resentencing in light of Pho without addressing the reasonableness of the sentence.

Russell filed a motion to continue his third sentencing pending the Supreme Court's decision in United States v. Claiborne, 127 S. Ct. 551 (2006),[4] and the final approval of amendments proposed by the Sentencing Commission to the guidelines applicable to crack cocaine offenses.[5]  The court denied the continuance, and then explained at the third sentencing hearing on May 10, 2007, that it had concluded that a continuance was unnecessary because it has substantial discretion to vary from the guideline sentence, notwithstanding our rejection of categorical ratio substitutions in Pho.  The court also concluded that it could take into account the proposed crack cocaine guideline amendments in considering the overall reasonableness of Russell's sentence.  However, the court

_____

[4]Claiborne was vacated as moot when the defendant died.  127 S. Ct. 2245 (2007) (per curiam).  The issues raised in the case were then decided in Gall v. United States, 128 S. Ct. 586 (2007). The Court held that appellate courts in reviewing a non-guideline sentence may "take the degree of variance into account," but the Court rejected "an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines."  Id. at 595.

[5]The Sentencing Commission's alteration to the guidelines became effective on November 1, 2007, reducing the base offense level associated with each quantity of crack by two levels. Kimbrough, 128 S. Ct. at 569.  Accordingly, if the new guidelines had been in effect when Russell was sentenced, his guideline sentencing range would have been 188 to 235 months.  See U.S. Sentencing Guidelines Manual § 2D1.1(c) (Drug Quantity Table) (Supp. 2008); id. ch. 5, pt. A (Sentencing Table)(Offense level 31, CHC VI).  His 180-month sentence thus falls below the revised guidelines for his offense.

explained that it had "undervalued" several aggravating factors at the previous sentencing. The court particularly noted the large amount of crack cocaine involved and Russell's violent escape attempt, which had forced officers to fire their weapons in a busy McDonald's parking lot, where children might have been endangered. The court imposed a 180-month sentence.

Russell then filed this appeal, claiming that his sentence was unreasonable. While the appeal was pending, the Supreme Court decided Kimbrough. Russell argues that the Kimbrough decision further supports his contention that his 180-month sentence was unreasonably high. The government counters by asserting that the district court anticipated the holding in Kimbrough and properly considered all of the relevant factors in making the individualized determination called for by § 3553(a).[6] We agree.

**II.**

"We review the substantive reasonableness of a sentence for abuse of discretion, but we first consider whether the court

---

[6]The government also argues that any procedural error was harmless beyond a reasonable doubt because it is unlikely that the district court would impose a lower sentence if the case were remanded. Because we conclude that there was no error, we need not address the government's harmless error analysis. Also, the plain error analysis we applied in our recent decision in United States v. Matos, 2008 WL 2687385 (1st Cir. July 10, 2008), is inapplicable. There the Kimbrough issue was not preserved. More importantly, as we explain, here there was no Kimbrough error at all by the sentencing judge.

below committed a 'significant procedural error, such as . . . treating the Guidelines as mandatory.'" <u>United States</u> v. <u>DeCologero</u>, 530 F.3d 36, 70 (1st Cir. 2008) (quoting <u>Gall</u> v. <u>United States</u>, 128 S. Ct. 586, 597 (2007)). Accordingly, we turn first to Russell's contention that the district court committed a procedural error by failing to consider the crack/powder cocaine disparity as explicitly permitted now by <u>Kimbrough</u>.

**A. <u>Pho</u> and <u>Kimbrough</u>**

In <u>Pho</u>, we held that "the district court erred as a matter of law when it constructed a new sentencing range based on the categorical substitution of a 20:1 crack-to-powder ratio for a 100:1 ratio embedded in the sentencing guidelines." 433 F.3d at 64. We explained that "sentencing decisions must be done case by case and must be grounded in case-specific considerations, not in general disagreement with broad-based policies enunciated by Congress or the [Sentencing] Commission." <u>Id.</u> at 64-65. Our holding was thus limited to a rejection of a categorical, policy-based ratio substitution. We cautioned that "we [did] not intend to diminish the discretion that, after <u>Booker</u>, district courts enjoy in sentencing matters or to suggest that, in a drug-trafficking case, the nature of the contraband and/or the severity of a projected guideline sentence may not be taken into account on a case-by-case basis." <u>Id.</u> at 65.

In Kimbrough, the Supreme Court reversed a Fourth Circuit decision that had taken a far more restrictive approach than we had in Pho. The Fourth Circuit had held that "a sentence 'outside the guidelines range is per se unreasonable when it is based on a disagreement with the sentencing disparity for crack and powder cocaine offenses.'" Kimbrough, 128 S. Ct. at 565 (quoting United States v. Kimbrough, 174 Fed. Appx. 798, 799 (4th Cir. 2006) (per curiam)). The Supreme Court rejected the Fourth Circuit's approach because it made "the crack/powder disparity effectively mandatory." Id. at 564. The Court held instead that a sentencing judge "may determine . . . that, in a particular case, a within-Guidelines sentence is 'greater than necessary' to serve the objectives of sentencing," as set forth in 18 U.S.C. § 3553(a), and that "[i]n making that determination, the judge may consider the disparity between the Guidelines' treatment of crack and powder cocaine offenses." Id.

Although the Kimbrough Court listed Pho as one of the circuit court decisions that had taken the view that a "sentencing court may not impose a sentence outside the Guidelines range based on its disagreement with the crack/powder disparity," Kimbrough, 128 S. Ct. at 566 n.4, we respectfully question that assessment.[7]

_____

[7]The Supreme Court vacated our decision in Pho, along with the decisions of other circuits that the Supreme Court deemed incompatible with Kimbrough. We obviously accept that decision. We remanded Pho to the district court for resentencing in light of the Supreme Court's decision. However, our fidelity to the

-10-

Indeed, there has been widespread misunderstanding of Pho in this circuit. We rejected in Pho the categorical substitution by the sentencing judge of a lower ratio – effectively, a constructive guideline sentencing range – for all crack cocaine offenders. However, we expressly preserved the discretion of the sentencing judge to consider the "nature of the contraband and/or the severity of a projected guideline sentence . . . on a case-by-case basis." Pho, 433 F.3d at 65. This case-by-case, individualized analysis is precisely the approach endorsed by the Supreme Court in Kimbrough. In detailing the method used by the sentencing court in Kimbrough, the Court approvingly noted that "the [sentencing] court did not purport to establish a ratio of its own. Rather it appropriately framed its final determination in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary' to accomplish the sentencing goals advanced in § 3553(a)(2)." 128 S. Ct. at 575. Thus, at its core, Pho is actually consistent with Kimbrough: both decisions emphasize the importance of individualized, case-by-case sentencing determinations, rather than a reliance on generalized ratios.

As we recently explained, "the Kimbrough Court's organic reading of section 3553(a) suggests that a sentencing judge should engage in a . . . holistic inquiry," by considering "a tapestry of

_____

decisions of the Supreme Court does not preclude us from expressing reservations about the Supreme Court's characterization of one of our decisions.

-11-

factors, through which runs the thread of [the] overarching principle" of parsimony. <u>United States</u> v. <u>Rodríguez</u>, 527 F.3d 221, 228 (1st Cir. 2008). After <u>Kimbrough</u>, it is clear that the undue harshness that may result from the 100:1 crack/powder ratio is properly considered as one of those factors woven into the tapestry as the district court considers what sentence is "sufficient, but not greater than necessary" in each individual case.

## B.  Russell's Third Sentencing Hearing

The question, then, is whether the district court avoided procedural error at Russell's third sentencing hearing by properly considering all of the relevant factors – including the crack/powder disparity – in making its § 3553(a) determination that a 180-month sentence was "sufficient, but not greater than necessary" in this particular case. Our review of the transcript reveals no error.

At the hearing, the district court began by addressing its rationale for denying Russell's motion for a continuance, explaining that <u>Pho</u> did not substantially constrain its discretion:

> So the reason that I really felt that, on that ground, that I wasn't inclined to grant the motion is that I feel that we have a substantial discretion to impose a non-guideline sentence, and what <u>Pho</u> said really was that district courts should not get into the business of defining a, sort of a uniform or across-the-board policy basis with respect to those kinds of sentences, but rather should be doing them on a case-by-case basis, but sort of left open, I think very clearly left open [to] the discretion of the district court

-12-

to formulate a sentence that is whatever the Court feels is a reasonable sentence.

This view of Pho is, as we noted above, consistent with the Supreme Court's later holding in Kimbrough. Indeed, we think that the district court here presciently anticipated the guidance that the Court would provide in Kimbrough. Later in the hearing, the court stated:

> [W]e have been told by the Court of Appeals that the application of a rigid 20-to-1 ratio was error and that that's not the way to go about doing these sentences. And I think I've said before, and sort of reflecting on this over the last few years, I think the Court of Appeals was probably right about that. And as to the policy part of it, I think that our job is to look at these cases on a real case-by-case basis and try to come up with a sentence that is appropriate.

The court clearly – and correctly – believed that it had the authority to consider the crack/powder disparity as one factor in that case-by-case analysis. Referencing the proposed amendments to the crack sentencing guidelines, the court explained:

> The history of these amendments is that Congress has rejected them, although there's some reason to believe they would accept this one. But, again, as I'm looking at it, I'm inclined to think that you can argue, I suppose, that this is further evidence that the guideline range in this case is not reasonable. And you might have a lot of arguments that sort of fit into that – a number of arguments that you would make in order to say it's not reasonable, including various statements of the Sentencing Commission about crack cocaine sentences over the last few years, and this would just be an additional item to support that argument.

-13-

> From my point of view, I feel that I've got the discretion to put all of that into the basket and try to figure out what a reasonable sentence is under the advisory guideline system.
>
> So once again, I'm not sure I need to see that amendment either be adopted or not be adopted in order to figure out, from my point of view, what I think a reasonable sentence is.

The court concluded that a reasonable sentence for Russell was 180 months, 29 months <u>longer</u> than the 151-month sentence that the court had imposed at the second sentencing but still well below the bottom of Russell's guideline sentencing range.

Given the court's understanding of the discretion it retained after <u>Pho</u> in fashioning an individualized sentence, Russell's contention that the constraints of <u>Pho</u> produced the longer sentence at his third sentencing is untenable. Rather, the court explained that it had "undervalued" other factors at Russell's second sentencing. The court described being "struck" by three factors in reviewing the case:

> One is that I think the quantity of cocaine here was pretty substantial. And there were several transactions, not just one. The amount of money involved was substantial, and I think these facts pointed to your role as a dealer as somewhat more substantial than other defendants that I've seen. . . .
>
> The second thing that struck me is that the Government did not file an 851 enhancement[8]

---

[8]If the government had filed an information under 21 U.S.C. § 851 stating a prior drug felony conviction, Russell would have been subject to an increased statutory mandatory minimum sentence of 20 years. <u>See</u> 21 U.S.C. §§ 841(b)(1)(A), 851(a).

-14-

> in this case, which it certainly could have . . . .
>
> And then the third thing that struck me was that, in rereading the facts of the case, was the attempt to escape and the fact that three officers were hit by the car, the fact that this all occurred at a McDonald's restaurant, a busy place. There could have been children running around. And I think that's a disturbing fact, even perhaps more disturbing is the fact that the police officers had to fire their weapons in response to the attempt to escape.

These three factors led the court to conclude that "a somewhat greater sentence than what [it had] previously imposed is appropriate." Thus, the record of Russell's third sentencing hearing reveals that the district court considered the crack/cocaine disparity as well as a host of other individualized factors in reaching a holistic assessment of the sentence called for by § 3553. We perceive no procedural error.

## C. Substantive Reasonableness

Having satisfied ourselves that the sentence is procedurally sound, we proceed "to review the substantive reasonableness of the sentence, taking into account the totality of the circumstances . . . [and giving] 'due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" United States v. Martin, 520 F.3d 87, 92 (1st Cir. 2008) (quoting Gall, 128 S. Ct. at 597).

Russell points to two factors that he contends should have driven his sentence even lower. First, he argues that the

-15-

district court did not adequately consider the crack/powder disparity in arriving at his sentence.  However, we have no reason to question the adequacy of the size of the downward departure the district court granted on the basis of the disparity here.  The record of all three sentencing hearings, read together, suggests that there were no other substantial mitigating factors that could explain the significant downward variance here.  At the second sentencing hearing, the only factor the court discussed that would lead to a below-guideline sentence was the crack/powder disparity.  Similarly, at the third sentencing hearing, the only mitigating factors specifically referenced by the court were the history of proposed amendments to the crack/powder ratio in the guidelines and the "yo-yo effect with respect to sentencing" that Russell had had to endure as a result of the several remands in the case.  Thus, it appears that the crack/powder disparity accounts for the bulk of the fifty-five-month downward variance in Russell's sentence.

Second, Russell contends that the district court failed to adequately account for his personal circumstances in the third sentencing.  He describes those personal circumstances as having "limited education and employment opportunities, marijuana and alcohol addictions, and a young child."  We fail to see how this vague description places Russell so far from "the mine-run of criminal defendants," see Martin, 520 F.3d at 95, as to require the district court to impose a sentence even farther below the

-16-

guideline range than the 180-month sentence it imposed. Russell's arguments fall far short of undermining the substantive reasonableness of his sentence.

**Affirmed**.